Case number cases case numbers two three dash five three zero zero and two three dash five three zero one Zillow Incorporated V Thomas Miller at all or arguments to be ten minutes for intervening plaintiffs Ten minutes for intervening defendants and ten minutes for defendants appellees Mr. Mike trip Michael Patrick a body for appellants cross appellees Good Afternoon your honors, I'm Michael Abadi on behalf of the Kentucky Press Association and Louisville business first Your honors this case was brought by Zillow a multi-billion dollar real estate company in order to avoid paying commercial requester fees under the Kentucky Open Records Act Instead the trial court issued an order that required newspapers who were not a party to the proceeding below To pay those same fees going forward Although the ruling was limited to newspapers the reasoning of the trial court's opinion has no limit if it is unconstitutional To require Zillow to pay the same fees as newspapers It is similarly unconstitutional to require Zillow to pay the same fees as TV radio and indeed even private citizens making requests under the statute District court rule on the TV station aspect No, your honor solely because it noted that Zillow hadn't challenged that adequately in its pleadings. So although the court did not Formally rule on it the reasoning of the opinion in the next case would require the same thing And in fact tomorrow my clients the Press Association could turn around and file a suit that says well now we have to pay these fees But the TV stations and radios don't and you know, we could keep playing this game You said even private citizens. Are you referring to the litigation exception? No, I'm referring to normal citizens who request records under the act under the reasoning of the trial court it was a speaker based distinction and The speaker would have been you know, Zillow would pay fees that a private citizen would You're talking about private citizens who are considered non-commercial correct? Yes, your honor Yes Again, the court rejected the challenge on the commercial non-commercial distinction and accepted the challenge on the speaker based or content based distinction but then they Okay, they you're saying that that if somebody for whatever reason wanted to complain about a non-commercial private citizen not paying I'm not sure quite how they would under is somebody who didn't want to pay the commercial fees All we're saying is under the reasoning of the trial court standing would be a real problem Good. Well somebody who had to pay the commercial fees say a newspaper could come in and say well Hey, this private citizen here could request the same records without paying the fee. That's not fair either. So I Make the point simply to show the reach of the court's opinion I think there are four ways that this panel can reverse what happened in the trial court The first and most direct is to hold that Zillow did not have the right to bring a facial challenge to the statute Under the Amelkin case and the United reporting case if this court rules no facial challenge Then there wouldn't have been grounds to sever the newspaper exception as a whole and they just go back and make the you know Making the as applied analysis and he might very well come out the same way and we'd be back here again well as Let me be a little parochial for my clients as as it pertains to the newspapers and Louisville business first in the absence of a facial challenge the court wouldn't have had the power to sever entirely The newspaper exception it could have enjoined an unconstitutional application to Zillow and excuse Zillow for paying the fees But it couldn't have taken a red pencil to the newspaper exception as it purported to do The second way that this court could reverse or should reverse even if a facial challenge is proper is to say that this is simply a subsidy and under the First Amendment case law a Subsidy a subsidizing of speech by the state and under the controlling case law as long as it is not viewpoint Discriminatory a subsidy is okay Davenport versus Washington Education Association said that and Reagan versus taxation. Well, I mean to the extent that Any benefit is a subsidy. What about the Discovery Network case where the Supreme Court and Sixth Circuit held that? You couldn't Distinguish in favor of the New York Times and against auto dealers and Christian singles Well, I mean judge bugs. I don't call that a subsidy We're letting you rent that, you know getting the benefit of using the street corner and not letting these other people do it Well in terms of the actual cases Like I said, I think the closer analogy is Davenport and Reagan in terms of the actual cases where government money is being Used to offset costs that would otherwise be borne by a private party The Supreme Court has said and Davenport said it expressly as long as it's not viewpoint based that it's permissible So we think that would be the second way this court could reverse his subsidy the third way this court could reverse is by saying that There was no need to apply strict scrutiny because this is neither Content based nor viewpoint based isn't it speaker based? Well, even if it is speaker based your honor it that that is okay So long as that's not meant to control the content the mere fact that it distinguishes based on speakers Does not make it content-based this court said that and shickle the dilger just in the last few years And it has to instead be a proxy for content here The fee doesn't vary based on what kind of records you ask It doesn't matter if you want tax records school district records police records emails Probably could it be speaker based because it's preferring Newspapers and radio and TV as opposed to more perhaps commercial ventures like Zillow Well, we don't think it's speaker based because it focuses on the use and not the identity if a newspaper wanted to do the same Thing Zillow is doing to monetize and sell the data. We would be subject to commercial fees, too Doesn't it really do that? I mean when I opened the Courier-Journal on Sunday There's a list of all the home sales if I want to look at the home sales in my neighborhood I can go on the computer for Zillow or I can open up the newspaper But that that's not what the Open Records Act has ever understood The commercial speech to be and I think the Supreme Court's cases have recognized selling a movie or selling a book For profit does not turn it into commercial speech. Really? So yes, I mean if so with a if a person shows up and says I'm not a newspaper I'm not a TV station, but I'm Robert Cairo and I want to look up Lyndon Johnson's Records and I probably am gonna put it in a book Are you saying he's not commercial even though his book sells millions? Yes, that's correct That's always been the case law under the Supreme Court It's the same thing as Discovery Network where they tried to say that the New York Times wasn't commercial. Well Sorry, let me distinguish news reporting is not commercial speech Simply because the newspaper or the TV show or the book or the movie is sold for profit that doesn't transform it into Per se commercial speech, but again that what we have here is a statute where the legislature has expressly said Not withstanding any of that a newspaper a TV a radio station or a private citizen should be able to access these records without Solely for the cost of reproducing them solely for the cost of the paper or the media If you're a commercial requester and you're gonna monetize it However, if you're gonna sell the data, which is a different use case judge more I don't think it's just a different identity Then you have to pay higher fees You have to pay the staff time involved in compiling it and if there was a cost to acquire you got to pay that, too I see I'm already at my red light. I'll just say the fourth point I was gonna say this court could reverse is if This court found there was a constitutional problem. It could level up instead of level down It could have said nobody has to pay these fees instead of saying the newspaper newspapers have to pay these fees And we explained the reasons for doing that in our brief, so thank you Good afternoon, your honors. My name is Darren Ford and I represent a Pele cross-appellant Zillow Inc in this appeal Probably speaking the district court arrived at the correct result in this case But did so based on an erroneous construction of the Kentucky statutes challenged by Zillow Which Zillow and the court below referred to as the commercial purpose fee statutes. It's KRS 61-874 8745 and 133.047 Notably as we note in our brief right from the outset is we did not actually Challenge the newspaper exception and there was a very important reason for that the newspaper exception along with what you could call the television station exception and the attorney exception are part of the Definition of commercial purpose and it is the application of commercial purpose in Various provisions of those commercial purpose fee statutes that creates the burden on Zillow's First Amendment rights in this case The newspaper exception standing alone creates no burden on Zillow's rights. It creates no burden on Zillow's First Amendment rights We're not in a competition to make it harder for anybody to make to get public records in Kentucky What our position is in this case and is the basis for our claims in this case is to say hey We engage in publication and related use of public records. The state hasn't challenged that I don't think the KPA even challenges that here We publish information for users free of charge The only reason we don't satisfy that exception from commercial purpose and have to pay these exorbitant fees And it's the difference in the deposition testimony in the case Established that it's a difference between paying maybe $50 a year for these records versus $124,000 so it's a substantial gap in what a Non-commercial requester would have to pay or a newspaper or television station or radio station would have to pay Versus what Zillow who intends to do the same thing with these records publish them for public use public consumption free of charge Contending that you don't fit within the definition of commercial purpose within the statute not at all your honor, I think for in commercial purpose is not a Speaker based definition so the first part of the definition really just says if you are going to earn fees From your use of public records an extremely broad definition I have it here in front of me, but basically it's it's if you are going to sale resale solicitation or Expect a profit either through commission salary or fee then your use for those records is commercial But the inquiry doesn't stop there right so if you so a newspaper would Meet that definition if they're going to publish as a judge Boggs mentioned They're going to list home sales And they're going to get that information potentially from the PVA's Then if they're advertising on the same page and they're selling newspapers and earning fees from the sales of newspapers They fill they fall within that commercial Exactly and that's what makes this statute facially unconstitutional Is that the inquiry that the PVA needs to engage in is two steps one is is your use does it fall within this extremely broad category of commercial purpose We don't we don't contest that fact we clearly are advertising on suppose that that's the only provision in the statute would that be facially unconstitutional to say that a private person having no Profit-making purpose doesn't have to pay a high fee But the rest of the people who are commercial purpose with a profit-making motive have to pay a high fee is that unconstitutional? so That's maybe a different case because obviously we have a statute that does have these exceptions But what I would say in response to that question just more. I think that just the very commercial non-commercial distinction itself So if that was all that it did and there were non-commercial speakers who would come and get these records Then you might fall within this the Cincinnati Discovery Network case right where it said hey You know trying to distinguish between these uses and trying to parse this ultimately the concern of the court in that case and in other cases is it allows the government to you know enter into an Examination of is what you're doing something that we like here Or is it something that we don't like and I think you know it wouldn't be hard to think of the kind of mischief that One might could could think of saying that that plain Simple statute that I'm hypothesizing would be facially unconstitutional I think that the evidence to establish that might be different than what we have here right because we have a facial statute that draws these distinctions But I think you would have to perhaps show that there were unconstitutional applications of that and on its face that it was a proxy for essentially favoring some types of speech and not other types of speech because I think to the KPA's point if that was all that the Statute said and a newspaper came in and they would clearly fall within that definition They would say hey wait a second. This is an unconstitutional infringement on our free press rights There would be arguments that they would make that just standing alone it infringed on their First Amendment rights And I think those those arguments would also potentially extend to Zillow as well That's because it's content based in your view my hypothetical So I think the under Sorrell you can look at just that definition say yes And here's why in Sorrell if you in that case it was dealing with Detailers and pharmacy information in order to promote You know sales of drugs and the content and the reason that Justice Kennedy found a problem with that statute was it prohibited marketing effectively and so marketing was the content and said hey if you're gonna Describe if you're gonna prescribe marketing and say you can't market with this information Then that is a content-based Restriction on speech you're preventing people that hold this information from disseminating that the language here talks about solicitation It's very vague it talks about sale Service you know so there are there are words in the statute that I think go beyond just saying okay This is something you're solely proposing a commercial transaction It allows for that sort of inquiry into well does this constitute As or any use by which the user expects a profit right doesn't that encompass everything that's profit versus an Individual who wants to know how much the neighbor is paying Property tax I think it's very broad I would agree with that your honor, but it does limit it a little bit It does say commission salary or fee And so unfortunately because you know our statute goes beyond that and does have these exception it does reflect the legislature's intent to favor and I think you know there's a there's a reason they did this to favor newspapers and Periodicals because they're the most likely Speakers to disseminate this to the public and I think the very underlying basic policy of the Open Records Act is to promote the free And open examination of the record so so those exceptions Father that and I don't think we wouldn't contest that again our argument is wait a second We do the same thing and it facially though you're still drawing these speaker and contest content based restrictions You bring an as applied challenge We did your honor and the court did not as a facial challenge you brought both we bought both and the court did not address Our as applied challenge we did invite in our briefs in this case as an alternative ground for affirming essentially district court although We would nevertheless ask for a modification But our as applied challenge is as Mr.. Abati said different, right? So we would not ask for severance of any portion of the statute. We would simply say hey You know we're maybe not a traditional newspaper. We're not you know a traditional periodical But there's no question that we are requesting these records for publication and related Use so that folks can go zillow surfing and they can look at houses in their market It helps liquidity in the real estate market There's lots of benefits to the way in which Zillow uses these records as you're even closer to their other client the business first Which makes lists and rankings and things which are even closer to what you do you you don't have comics business first doesn't have comics Exactly right every week, but I think Zillow and again this wasn't in the record So I don't want to go beyond that, but you know Zillow does have stories. It does have other information on its website It's not just that information if we if we were to take the the no facial Attack and remand, then I you would just press your as applied Challenge, and you would hope to win on at least somewhat vaguely similar grounds of of discrimination and so forth I well, I think that actually the the as applied challenge here your honor is closer to the reasoning of the district court It's just that the remedy would be different under those circumstances I think that you know when you look at and here the evidence I think is very clear that in assessing whether Zillow was a commercial purpose requester the PVA's were looking at you know And then they knew of course know of Zillow, but they say hey you don't tell stories. I think the rule 30b6 Witness for the for the DOR said you don't hold me accountable as a public official well You know those I think are all indisputably content based Speaker based viewpoint based and you can you can go down the list and find Something one of those folks said that clearly shows that if they're trying to parse Why Zillow is not a newspaper or periodical and I think importantly as well is that they conceded that the fact that we only publish? Online is not a is not it wasn't their positions ago. You don't have a print publication ergo You're not a newspaper that was not the argument They made it was simply that you the way that you use this information the way that you tell stories You are not a newspaper. You think you think the revenue position would be that bloggers would get the same break that newspapers do I think that's a hypothetical in our brief where we talked about what was a youtuber, right? Could they say we're like a radio station, and I think frankly they'd have the same case that we did for an as applied challenge I think they could very well say hey, we're broadcasting this information. Yes, YouTube pays us We earn money off of views, but we are disseminating this information from news or informational purposes We should be treated the same way again that as applied challenge does not require severance. I agree with mr. That's a very different remedy here It would basically say hey you can't apply those commercial purpose fee statutes to Zillow You need to treat them on the same on the same wavelength as a newspaper And I think you know again This is an alternative ground that we did raise in the court below the court district court didn't consider I think this court could also Look at that here, so we would invite the court at least to consider that as a possible way to To maybe expedite the resolution of this litigation so in conclusion as I see my time is up I would just ask that the court. You know look at look at the case and give us the remedy of either Fixing the the remedy here that doesn't actually afford Zillow any relief or potentially look at our as applied challenge And enjoyed application of the commercial purpose fee statute as to Zillow. Thank you Thank you Rick Berthelsen on behalf of the Kentucky Department of Revenue and the property valuation administrators To begin with Zillow is a multi-billion dollar corporation whose profits depend upon loading highly valuable PVA data Created through the labor of state employees into its living database of homes For its use by its multitude of real estate related businesses, not just its online property web property search website Zillow's Misguided constitutional challenge Kentucky's Open Records Act is simply a poorly executed scheme to increase its profits not by creating a new real estate service or by selling more ad space but by trying to strip to a certain extent Zillow does operate just the way a newspaper does doesn't it in terms of Publishing the data from the tax rolls Perhaps, but you also have to look under the covers to figure out what Zillow actually does and what Zillow actually does is it has multitude of real estate businesses home loans renting and selling branding real estate agents as Zillow premier agents and during discovery what we Did is we found the Zillow's 2020 10k report and it showed that its 2019 revenue sources included 923 million dollars from Realtors paying to be branded Zillow premier agents I mean have you looked at the Wall Street Journal every Thursday? They have this big section called mansion from which they Publish stories that are very much like what Zillow does in a different format it tells you when you know DiCaprio is selling his 30 million dollar mansion and tells you stories about it and pictures and then runs all these real estate ads Right next to it Just because the Wall Street Journal is a multi-billion dollar operation Does that make a difference? Well the difference there is that the Wall Street Journal does is not The owner of those other businesses that are advertising on the Wall Street Journal's website Zillow is is advertising its own businesses when you pull up like say you type in your own address what section of the law or the Constitution makes that make a difference I mean if the if you take my not hypothetical reality the Wall Street Journal makes millions and millions of dollars for Using public data, and then people buy the paper, and they advertise the fact it could set up its own real estate Business, but does that make any difference well?  I mean the Peggy Press Association itself has admitted that if it were to set up a website just like Zillow and use the data like Zillow does in a Living database of homes, let's say then they would have to pay the commercial purpose fees as well Yes, they admit that below that they did they did in fact in their brief here. They admit that but the the the the The thing is they charge separately for the real estate section of the paper that they deliver to my news to my doorstep Then they wouldn't get the newspaper exception mmm, I Don't I'm sorry if they if they charge separately charge separate in other words I can buy the Courier-Journal and then for an extra dollar a week. I can buy the Courier-Journal real estate section and Would that make them a commercial purpose? No comics no no Editorials no Joe girth well there the case law says that the the presses the the the press You know is not considered to be a commercial purpose when it is reporting the news and and if it's Reporting the news happening and it happens to use the governmental records in doing so then it's it's not considered a commercial purpose And in fact, you know the the department supports the Kentucky Press Association's argument here That the newspaper exception ruling was incorrect and should be overruled You know this this case really is not even though you get less money You're taking their side of it because it's the state law, and you're supporting it Yes, the state the the intent of the you get more money under event van Tatenhove's ruling right I certainly understand that But I'm I'm here to defend what the written letter of the law is and it's the intent of the Kentucky legislature to give a subsidy to newspapers and Broadcast news and litigants so that they can Get justice from the courts or print the news so that people can be informed about the goings-on of the government Without having to pay this So why isn't that an impermissible speaker based? Treatment because it's based on whether or not you expect a profit from Based on whether you expect a profit, but the the case law indicates that Regardless of newspapers being able to generate a profit from the reporting of the news that doesn't translate necessarily into a commercial Purpose, and it's there's there's always been subsidies for the press given by the Congress and by the several states in order to You know allow them to get government records or lower postage fees in order so that Newspapers magazines and whatnot can go out to the public and the public can be better informed about the goings-on of the government which is important for a healthy democratic society But in reality, this isn't really in the First Amendment case at all because the Open Records Act It only regulates access to government records. It doesn't Regulate the free expression of any topic idea or message and it doesn't single out any small group for differential treatment based upon the message or the topic of their speech using those records and The evidence below or the evidence in this case shows that Zillow was treated exactly like every other commercial purpose Requester who asked for the exact same PVA records during the same time period we found there was 20 different Organizations that asked for these kind of records and all of them paid the commercial purpose fees except for Zillow and some of them paid as much as $41,000 because they asked for all of the records or all of the property data for the entire County Which is what Zillow asked for and you know, these are like Black Knight, CoreLogic, Kentucky Utilities the Louisville Gas and Electric and the Kentucky American Water and you know all of those people paid the commercial purpose fees these Datasets are created through the labor of the employees of Kentucky. Was one of the things you just said American lawyer? Water. What? Kentucky American Water. Water Company. Oftentimes the utilities will ask for these Property information so that they can do eminent domain if they're going to. Just as an aside there then When lawyers run title searches, do they pay the commercial fee? I don't know the answer to that question. I guess it would depend upon whether or not they were using it for a litigation. I'm assuming they're not in litigation the normal title search. I mean, that's what that's the bread and butter of country lawyers. Certainly. And you know something also to focus on here is that the the commercial purpose fee It is attached to the making of copies for someone who requests copies There's no charge if anyone wants to come to the PVA office and look through the property cards themselves Take their phone out of their pocket set it on notes and make and scan Every document they look look at for free. So there's Zillow could come in and scan all the records if they wanted to. Yeah They could and anybody can look at non-exempt open records Records for no charge in any any agency It's only when you ask for the agency's personnel to work for you and to make records for you and to take time out of Their day where they're not where they should be doing their other job To make records for you and to send it in the mail or but I understand it and correct me if I'm wrong for For a regular individual who wants to know what their neighbor's tax Obligation was they just have to pay a copying fee Yes, but if it is Zillow wanting to know what my neighbor's tax record is Zillow has to pay for the Preparation of the record in other words these and that's not just the staff time to make the copy It's the actual preparation of the record. Is that correct? Yes, correct So in a sense, you're offloading the normal costs that you would have for making records Yes, I think in 1994 when the when the Open Records Act was amended to put the commercial purpose fees into the already existing open records the legislature clearly understood that there is a There is a commercial value to this Essentially intellectual property that the that the state of Kentucky creates with this by by creating these property valuation data and It was their determination to allow or to have the companies that profit from these Datasets to share in the cause. They're basically you're amortizing at least some if not all of the PVA operation That is correct. Okay, and as I am I right it was something like one of your counties Which are not the biggest counties was 40 or 50,000. Do you have the figure statewide? It must be in several millions I think I think the figure statewide would be about a million the total for the six PVA Offices here was I think correctly stated at a hundred and twenty thousand ish I would I would but I mean Yeah, I would think statewide would be several millions because those counties are only a few percent of the state They're not they're right, but the but the but the fees go down Depending upon how many you're asking for so it starts at one Jefferson County I would get a volume discount right so is there a difference in your opinion Between an as-applied and a facial challenge in this case That was a groan I heard Transcript reads groom, right In other words the district judge just did a facial right analysis, and if we were to say Normally you should do an as-applied challenge first Should we remand to the district court to do that or is it just going to be the same analysis? I think it's going to be the same analysis. I mean ultimately The the important thing is you know that? You know is really to understand that you know I think to the extent that there is a principle here to be Thought about in you know first and 14th amendment case. I think Zillow is just you know It's not really a good plaintiff in this case because it doesn't represent you know a Business whose only business is you know some kind of thing that you could call publishing because it has all of these other Ancillary businesses that all use the same data for the same thing I think the fact that it perhaps has something in its website that you could call Publishing if you stretch the definition of publishing enough it it almost is moot because you've got these other businesses which are home loans and branding Zillow agent Zillow premier agents for a fee and You know a bunch of other different real estate related businesses that have nothing Zillow structured itself differently and had one Sub part that was doing the equivalent of publishing and use that sub part to get the data here And then it transferred the data to the other sub parts that I'm hypothesizing Dillo that would be a sale which would not be allowed because our contract for providing the the data Under a commercial purpose fee request requires that you not sell the data to any other third party So they would they would still have to pay the the commercial purpose fee if that were their intent And that's exactly what the Kentucky Press Association said that is it that if the Courier-Journal were to set up a Zillow type website And do the same business as Zillow it would expect to be treated as a so purpose That's your your rule applies if you sell the data In effect in some bulk because I mean business first those book of lists Is pretty much selling the data outright isn't it? to I Mean it's much closer. I'm sorry. I'm not familiar with what with exactly well at least when I used to read it It's a publication. It's a business type publication, but they would have an annual or biannual Special thing that would have lists of things it true would have some other lists, but a lot of them would be Directly taken from the data rather little massage does my remember mr. Mr.. I may be able to I guess if it's kind of like a book I guess it's treated the same as as you treat press speech, and and that it's not considered commercial Purpose because it is speech of the press okay, and and your position on books would be the same as newspapers I believe so okay Thank you, thank you Thank You yours a few very brief points on rebuttal first on the facial challenge point this court said in a milk in at page 296 That's something that simply restricted access to government information Did not prescribe speech or threaten violators with prosecution wasn't subject to facial challenge We think that squarely applies here and takes us out of the world where we could sever the newspaper exception The second point is to the question judge more you were asking about content based I think the Supreme Court City of Austin ruling is directly on point there the court said quote it is too extreme To read the read case to say quote if a reader must ask who is the speaker? And what is the speaker saying that it's automatically content based the Supreme Court said that's not the test under City of Austin It can be speaker based. That's fine So long as it is not meant to suppress a viewpoint or limit by particular content and as we said here You can ask for any kind of records. It doesn't distinguish between the content of the records involved It's a used based distinction in City of Austin said that's okay You can read the sign to determine is it on-premise is it off-premise? What is the function that it is serving? It's okay that doesn't make it content-based One other point judge more you were asking about is it in judge Boggs amortizing all the staff costs of producing the records I think we have to be very careful that PVA records are actually a little different in the costs than the normal Open Records Act Statute there is a specific statute that governs what the PVA is can charge the normal Open Records Act provision Which is what is implicated by the judge's ruling just says the cost of reproducing the records. It doesn't allow you to amortize All this staff time. Yes, you can charge for reviewing and redacting the records for a commercial requester But you can't charge They're like all of your staff and rents and the overhead that went into producing it for a normal Open Records request But for this the PVA records a little bit different. I'm gonna defer to mr. Bertelsen and exactly what because it's a separate statutory provision It's KRS 133 And I'm sorry, I forget the last three digits of the the fee request But the district court kind of treated them as one in the same, but these fees are unique This is not the way you would charge if if a commercial requester came in and said I want you know All of the records of the school district that relate to whatever they wouldn't be able to invoke that same cost provision And Then judge Boggs on your last point I just you know There's a major distinction here between what? Zillow is doing and what Louisville business first does are the book of lists what we're talking about here You know that Zillow comes in and says I want your entire tax rule I believe the testimony was no media organization has ever come in and sought the entire tax rule, which is bulk data Yes business first seeks you know give me home sold over a million dollars in the last month It's a handful of records It's very different in kind than coming in and imposing on someone the burden to give us your entire Database so that we can use it and monetize it and all these other ways that have nothing to do with publication I could could a individual citizen come in and say I'd like all your tax records your tax rolls And not have to pay anything extra Could an individual citizen under the Open Records Act the end of well it depends what they're gonna Do with it if they're gonna set up their own business and try to monetize the data and sell it Yes Just I want to look at the entire tax rule then I think there probably would not be a commercial requester under the Open Records Just just to get a little more realistic if you just take Indian Hills or prospect or one of the fancy areas of Louisville you could imagine Voice Tribune or some other publication doing what business first does but getting everything from that little snippet or a investigative a freelance investigative reporter says I'm going to look at every house in Anchorage and maybe if I come up with something maybe I'll write a book or an article or try to peddle an Op-ed to the courier but that I guess I have two responses judge books One is and we cited the Joseph Burstyn case in our brief and I refer you back to that the Supreme Court has said look The mere fact that a book or a movie or a TV is sold for some form of profit does not transform it out of the Heartland of you know protected First Amendment activity like news gathering like reporting, you know Yes, the New York Times is sold it for a subscription fee, but it is still protected Speech but Secondly, I think at the bottom line what we have here is from day one of the Open Records Act in 19 7 mid-1970s the Kentucky General Assembly has said we want the news media to be on equal footing as Individual citizens as the eyes and the ears of the public to be able to request Records that belong to public agencies so they can look at them investigate them and report on them Because it is a public good when they enacted the commercial fees in the 1990s They said okay, we're gonna watch some people to be charged, but not the news media because they still serve this valuable function We're gonna we're gonna subsidize their requests, even if they might otherwise qualify as commercial requesters That's fine. So long as it's not an attempt to control viewpoint or the ultimate content of the publication and it doesn't either They don't tell the newspapers what you can do with the records what you can write about you can have these tax rules But you can't write about the owners of the homes or you can't write about this aspect it Speaker based is fine. So long as it's not a proxy for Unconstitutional discrimination, so what's your best case? If you were going to tell us to go look at one case that would support that that supports the speaker based is fine to This court in Shukla v. Dilger said just because it's speaker based does not mean it's content based and then the Supreme Court in Broadcast systems versus FCC These are both cited in our brief and they both stand for the proposition that speaker based is not that the district court I think got tripped up there. He assumed if it's speaker based. It's inherently unconstitutional But but that it's more nuanced than that. That's not what's your law dictates discovery network We're in the sense. It's that it would been a subsidy to let the New York Times have public space for free And not allow it for other people Now I don't think that that is But I don't think that functions and forgive me judge Boggs if I'm Misremembering the details that case that didn't function as a viewpoint or a content based Discrimination in order to do it because you weren't And that's the key. I mean it was Newspapers versus auto dealers Which is kind of like here right newspapers versus Zillow But again as long as I think as long as it doesn't you know amount to unconstitutional viewpoint discrimination That's okay. Not. I mean this court said in Chickle just three years ago Not every speaker based distinction But I'm discovery network did come out where they said you have to treat The New York Times the same as the Christian singles and the auto dealers. I Understand I guess our view is here. We think that the way that the Kentucky General Assembly has distinguished between users who wish to Essentially directly profit and monetize this from users who yes may sell their good for some fee But perform a essential public service That's what the that's what the General Assembly has declared since the 1970s that you know clients like Louisville Business First and Kentucky Press Association members are serving a public service which the General Assembly is Willing to subsidize and that's why I'll end where I started I mean we think there are these four paths to reversal If you get past the facial challenge point if it's a permissible subsidy You don't need to get into speaker based or content based as long as it is not viewpoint discriminatory. It can be a subsidy Thank you all for your argument and the case will be submitted